**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | | |
|---|---|---|
| GARGANUS T. MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:15-cv-00263-WTL-MJD |
| | ) | |
| GARLAND, SPURLIN, | ) | |
| | ) | |
| Defendants. | ) | |

**Entry Granting Motion for Summary Judgment**
**and Directing Entry of Final Judgment**

Garganus T. Moore filed this action on August 21, 2015, contending that his constitutional rights were violated while he was incarcerated in the Indiana Department of Correction ("DOC"). Mr. Moore claims that the defendants, Mr. Garland and Mr. Spurlin, violated Mr. Moore's Eighth Amendment rights on July 29, 2015, by providing Mr. Moore with a pack of BIC razors, which Mr. Moore used to cut himself. The defendants move for summary judgment arguing that Mr. Moore failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), before filing this lawsuit.

**Summary Judgment Standard**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" designated evidence which "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-movant may not rest upon mere allegations. Instead, "[t]o successfully oppose a motion for summary judgment, the nonmoving party must come forward with specific facts demonstrating that there is a genuine issue for trial." *Trask–Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 677 (7th Cir. 2008). "The non-movant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted).

**Discussion**

A. *Undisputed Facts*

At all times relevant to his Complaint, Mr. Moore was confined by the DOC at Wabash Valley Correctional Facility ("Wabash Valley"). There is a grievance process in place at Wabash Valley which is set forth in DOC Policy and Administrative Procedure 00-02-301, ("Offender Grievance Process"). This policy governs the grievance procedure and details how an offender must exhaust his administrative remedies. The Offender Grievance Process was amended on April 5, 2015. This amendment altered the grievance forms, among other parts of the process.

Copies of the Offender Grievance Process and grievance forms are readily available to offenders from their assigned Counselor, Case Manager, or Unit Team. Under the Offender Grievance Process, offenders can submit grievances over the actions of individual correctional officers and other staff, the manner in which those persons apply DOC's policies, procedures, or rules, and any other concerns or issues that relate to the conditions of care or supervision.

The Offender Grievance Process consists of three stages. First, an offender must attempt to resolve the grievance informally through officials at the facility by contacting staff to discuss the matter or incident subject to the grievance and seeking informal resolution. The informal

grievance step must ultimately include the submission by the inmate of State Form 52897 to the Offender Grievance Specialist.

Second, if the offender is unable to obtain a resolution of the grievance informally, he proceeds to the Level I formal grievance process. The formal grievance must be submitted on State Form 45471 and meet the other requirements set forth in the Offender Grievance Policy. A Grievance Specialist will then screen the formal grievance, and if, without good cause, the formal grievance does not comply with the requirements of the Offender Grievance Policy, it will be returned to the inmate with an explanation of why it was deficient. It is then the responsibility of the inmate to correct the noted deficiencies and resubmit the formal grievance. If the formal grievance complies with the Offender Grievance Policy, the Grievance Specialist logs the grievance.

Third, if the Level I formal grievance process does not resolve in a manner that satisfies the inmate, he may submit an appeal to the Department Offender Grievance Manager.

Exhaustion of the grievance procedure requires the submission of a formal grievance and the filing of an appeal to the final step of the grievance process. If an offender does not receive a response from staff in accordance with the established time frames, he is entitled to move to the next stage of the process.

As an inmate at Wabash Valley, Mr. Moore had access to the Offender Grievance Process. All offenders are made aware of the Offender Grievance Process during orientation and a copy of the Offender Grievance Process is available within the prison at the law library.

Mr. Moore alleges that on July 29, 2015, the defendants delivered a commissary order to Mr. Moore containing food and hygienic products to his cell. Mr. Moore further alleges that this

commissary order contained one pack of BIC twin razor blades, which he alleges he later used to cut himself.

The next day, on July 30, 2015, Mr. Moore wrote and sent grievances to Counselor Thomson. One grievance was in regard to the razor delivery. Mr. Moore asked his counselor to send the grievances to the Grievance Specialist, Ms. Littlejohn. Counselor Thomson forwarded the grievances back to Mr. Moore indicating that Mr. Moore used the wrong form and needed to go through the informal process first.

On August 4, 2015, a formal written grievance was received by Ms. Littlejohn regarding the events of July 29, 2015. On August 4, 2015, Mr. Moore wrote to Mrs. Littlejohn asking if she had received his three grievances, one of which concerned the July 29, 2015, incident. In response, Mrs. Littlejohn wrote on the bottom of the letter, "They are being returned to you. Follow instructions on Return of Grievance Forms." A note on Mr. Moore's Offender Grievance dated August 4, 2015, also states "RG03/RG16 – Wrong Form. Follow current procedure."

On August 11, 2015, Mr. Moore received the return of his three grievances, informing him that he failed to submit the grievances on the proper forms and failed to attempt to resolve the grievances informally in writing, as required by DOC policy. The Return of Grievance Form, dated August 11, 2015, indicates that the grievances were returned for using the wrong form and for the reasons that there is no indication that Mr. Moore attempted to resolve his complaint informally.

On August 13, 2015, Mr. Moore properly submitted an informal grievance form regarding the July 29, 2015 commissary delivery, which was responded to on August 24, 2015. See dkt. 28-8.

Mr. Moore's complaint was filed on August 21, 2015, and docketed on August 25, 2015. Mr. Moore claims that he "attempted to exhaust all remedies but DOC personnel acting as if I didn't follow protocol." (Dkt. 1, Compl., p. 23).

On August 25, 2015, Mr. Moore submitted a formal grievance form regarding the incident alleged on July 29, 2015. See dkt. 28-9. This grievance was returned to Mr. Moore because he requested relief that was not authorized through the grievance process. Thereafter, Mr. Moore sent a letter dated September 14, 2015, to the Grievance Specialist seeking to appeal the returned and unfiled grievance. Ms. Littlejohn responded to the letter noting that he cannot appeal a grievance that has not been entered.

B. *Exhaustion*

The defendants argue that Mr. Moore failed to exhaust his available administrative remedies as required by the PLRA with respect to his claims against them. Mr. Moore disputes this argument.

The PLRA requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'")(*quoting Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). Strict compliance is required with respect to exhaustion, and a prisoner must properly follow the prescribed administrative procedures in order to exhaust his remedies. *Dole v.*

*Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The PLRA's exhaustion requirement is not subject to either waiver by a court or futility or inadequacy exceptions. *Booth v. Churner*, 532 U.S. 731, 741, n.6 (2001); *McCarthy v. Madigan*, 503 U.S. 140, 112 S. Ct. 1081 (1992) ("Where Congress specifically mandates, exhaustion is required."). Post-filing exhaustion of administrative remedies does not establish compliance with the requirements of the statute. See *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004) ("Ford's real problem . . . is timing. Section 1997e(a) says that exhaustion must precede litigation. 'No action shall be brought' until exhaustion has been completed. . . . And these rules routinely are enforced . . . by dismissing a suit that begins too soon, even if the plaintiff exhausts his administrative remedies while the litigation is pending . . . . To prevent this subversion of efforts to resolve matters out of court, it is essential to keep the courthouse doors closed until those efforts have run their course.")(internal citations omitted).

C. *Analysis*

The undisputed facts demonstrate that the defendants have met their burden of proving that Mr. Moore "had available remedies that he did not utilize." *Dale*, 376 F.3d at 656. The Offender Grievance Process in place at Wabash Valley sets forth three required steps for an inmate to exhaust his administrative remedies, yet Mr. Moore did not comply with at least the final two steps. Specifically, when this action was filed on August 21, 2016, Mr. Moore had not filed a proper Level I formal grievance, nor has he at any time filed a grievance appeal. This was at least in part due to the fact that Mr. Moore's grievances were returned to him because they failed to comply with Offender Grievance Process. But the exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (citation and quotation marks omitted). Mr. Moore did not *properly* file his grievances, and thus the fact that his grievances were returned to him is of no

avail.

Mr. Moore resists the obvious conclusion of the foregoing on several grounds, none of which is persuasive. First, he argues that he previously used an outdated grievance form and it was not returned. His evidence of this, however, is a grievance from October 17, 2014, which is before the Offender Grievance Process and the grievance forms were revised on April 5, 2015. Mr. Moore therefore has no evidence that the old grievance form was accepted after it had been revised.

Second, Mr. Moore argues that the old and revised grievance forms are essentially the same, so his old grievance form should not have been rejected. As an initial matter, as the respondent points out, there were significant changes to the revised form—e.g., the informal grievance process has been separated from the Level I grievance form—so the premise of Mr. Moore's argument is simply incorrect. But even if the forms were substantially the same, Mr. Moore's argument would still be a non-starter since "[p]risoners must follow state rules about the time and content of grievances," *Riccardo v. Rausch*, 375 F.3d 521, 523 (7th Cir. 2004), and the Offender Grievance Process requires inmates to submit grievances on the appropriate form.

Finally, Mr. Moore asserts that he attempted to properly exhaust his administrative remedies once he was alerted as to the deficiencies in his initial grievances. Even if this were true, the PLRA requires exhaustion to "precede litigation," which is to say that "'[n]o action shall be brought' until exhaustion has been completed." *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) (quoting *Perez v. Wis. Dept. of Corr.*, 182 F.3d 532 (7th Cir. 1999)). Mr. Moore filed this suit on August 21, 2015, and at that time he had not exhausted his administrative remedies. What occurred after this date regarding exhaustion is irrelevant for the purposes of this case.

In sum, the undisputed evidence shows that Mr. Moore did not exhaust his administrative

remedies as required by the PLRA. The consequence of this, in light of 42 U.S.C. § 1997e(a), is that Mr. Moore's claims must be dismissed without prejudice. *See Ford*, 362 F.3d at 401 (holding that "*all* dismissals under § 1997e(a) should be without prejudice.").

**Conclusion**

The defendants' motion for summary judgment [dkt. 26] is **granted**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 7/29/16

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

GARGANUS T. MOORE
170307
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362